**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang**

Civil Action No. 23-cv-02224-NYW-STV

RLI INSURANCE COMPANY,

       Plaintiff/Counter-Defendant,

v.

MARJAN BARNES, individually and as personal representative of the Estate of Michael
Stanley Barnes,
KELCI BARNES,
CAITLIN BARNES, and
CORI BARNES,

       Defendants/Counter-Plaintiffs.

---

**MEMORANDUM OPINION AND ORDER**

---

This matter is before the Court on Plaintiff's Motion for Summary Judgment (or the
"Motion"). [Doc. 24]. The Court has reviewed the Motion and the related briefing and
concludes that oral argument would not materially assist in the resolution of this matter.
For the reasons set forth below, Plaintiff's Motion for Summary Judgment is respectfully
**DENIED**.

**BACKGROUND**

The following factual background is drawn from the summary judgment record, and
the facts herein are undisputed unless otherwise noted. At all relevant times, Michael
Barnes ("Mr. Barnes") and his wife, Marjan Barnes ("Ms. Barnes"), held primary personal
automobile insurance coverage from Safeco Insurance Company ("Safeco"), with up to
$500,000 in uninsured/underinsured motorist ("UM or UIM") coverage. [Doc. 24 at ¶¶ 5–

6; Doc. 27 at 4 ¶¶ 5–6; Doc. 21 at 8–9; Doc. 24-3 at 1–2].  They also held a personal

umbrella liability policy (the "Umbrella Policy") through Plaintiff RLI Insurance Company

("Plaintiff" or "RLI"), [Doc. 24 at ¶ 1; Doc. 27 at 4 ¶ 1; Doc. 21 at 8; Doc. 24-2 at 2], which

provides up to $1,000,000 in excess uninsured/underinsured motorist coverage, [Doc. 24

at ¶ 7; Doc. 27 at 4 ¶ 7; Doc. 24-2 at 1–2, 12].  The Umbrella Policy also includes the

following coverage exclusion (the "physical contact exclusion"):

WHAT IS NOT COVERED – EXCLUSIONS

This policy does not provide coverage for:

. . . Damages because of **Bodily Injury** if there was no physical contact
between you or your **Relative** and the Uninsured/Underinsured motor
vehicle or between the motor vehicle occupied by you or your **Relative** and
the Uninsured/Underinsured motor vehicle.

[Doc. 24 at ¶ 8; Doc. 27 at 4 ¶ 8; Doc. 24-2 at 6, 11–12].[1]

On February 14, 2023, Zavion Vineyard ("Mr. Vineyard") was driving in Los

Angeles, California, and Mr. Barnes was biking in the same area.  [Doc. 24 at ¶¶ 10–11;

Doc. 27 at 4 ¶¶ 10–11; Doc. 1 at ¶¶ 18–19; Doc. 14 at ¶¶ 18–19].  Mr. Vineyard's car

struck a gate, which swung open and struck and killed Mr. Barnes.  [Doc. 24 at ¶¶ 9, 12;

Doc. 27 at 4 ¶¶ 9, 12; Doc. 21 at 9; Doc. 1 at ¶ 20; Doc. 14 at ¶ 20].

Ms. Barnes received $500,000 in UIM motorist benefits from her primary insurer,

Safeco.  [Doc. 24 at ¶ 15; Doc. 27 at 5 ¶ 15; Doc. 21 at 9].[2]  Pursuant to her Umbrella

---

[1] Defendants dispute that this exclusion applies to bar coverage in this case, *see* [Doc. 27 at 4 ¶ 8], but they do not dispute that the Umbrella Policy includes this exclusion.

[2] The Parties agree that the vehicle driven by Mr. Vineyard was insured through Infinity Insurance Company, with bodily injury liability limits of $15,000.  *See* [Doc. 24 at ¶ 13; Doc. 27 at 4 ¶ 13; Doc. 1 at ¶ 21; Doc. 14 at ¶ 21].  However, the Parties do not indicate in their briefing whether Ms. Barnes received any benefits pursuant to that insurance policy.

Policy with RLI, Ms. Barnes requested additional UIM benefits from Plaintiff.  [Doc. 24 at ¶ 14; Doc. 27 at 5 ¶ 14; Doc. 21 at 9].  RLI denied the claim after concluding that, based on the physical contact exclusion, Ms. Barnes is not entitled to coverage.  [Doc. 24 at ¶ 17; Doc. 27 at 5 ¶ 17; Doc. 21 at 9].

RLI initiated this declaratory judgment action on August 30, 2023, seeking a declaration that no coverage exists under the Umbrella Policy.  *See* [Doc. 1].  Defendants—Ms. Barnes, Kelci Barnes, Caitlin Barnes, and Cori Barnes[3]—assert three counterclaims against RLI:  (1) breach of contract; (2) unreasonable delay or denial of insurance benefits under Colo. Rev. Stat. §§ 10-3-1115 and -1116; and (3) bad faith breach of an insurance contract.  [Doc. 14 at ¶¶ 24–43].  Plaintiff now moves for summary judgment on its declaratory judgment claim and on all of Defendants' counterclaims.  *See* [Doc. 24].  The Motion is fully briefed, *see* [Doc. 27; Doc. 30], and the Court considers the Parties' arguments below.

## LEGAL STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A dispute is genuine if there is sufficient evidence so that a rational trier of fact could resolve the issue either way.  A fact is material if under the substantive law it is essential to the proper disposition of the claim."  *Crowe v. ADT Sec. Servs., Inc.*, 649 F.3d 1189, 1194 (10th Cir. 2011) (citation and quotations omitted).

---

[3] Kelci Barnes, Caitlin Barnes, and Cori Barnes are the adult daughters of Mr. and Ms. Barnes.  *See* [Doc. 27 at 1].

A movant that does not bear the ultimate burden of persuasion at trial does not need to disprove the other party's claim; rather, the movant must only point the Court to a lack of evidence for the other party on an essential element of that party's claim. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998). Once the movant has met this initial burden, the burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quotation omitted). But "if the moving party has the burden of proof [at trial], a more stringent summary judgment standard applies." *Pelt v. Utah*, 539 F.3d 1271, 1280 (10th Cir. 2008). A moving party who bears the burden at trial "must establish, as a matter of law, all essential elements of the issue before the nonmoving party can be obligated to bring forward any specific facts alleged to rebut the movant's case." *Id.*

When considering the evidence in the record, the Court cannot and does not weigh the evidence or determine the credibility of witnesses. *See Fogarty v. Gallegos*, 523 F.3d 1147, 1165 (10th Cir. 2008). At all times, the Court views the record in the light most favorable to the nonmoving party. *Banner Bank v. First Am. Title Ins. Co.*, 916 F.3d 1323, 1326 (10th Cir. 2019).

## ANALYSIS

Plaintiff argues that no coverage exists under the Umbrella Policy and that it is entitled to a declaratory judgment to that effect. [Doc. 24 at 2, 10]. And because, in its view, no coverage exists, Plaintiff argues that it could not have breached the insurance contract and could not have acted in bad faith, such that it is entitled to summary judgment on Defendants' counterclaims. [*Id.* at 16–18]. In response, Defendants contend that RLI is not entitled to summary judgment on any claim because the physical contact exclusion

4

is ambiguous and must be construed in favor of coverage, which would negate all of

Plaintiff's arguments in favor of summary judgment.  [Doc. 27 at 8–16].[4]

## I.        Interpreting Insurance Contracts Under Colorado Law

The interpretation of an insurance policy is a matter of law for a court to decide.

*F.D.I.C. v. Bowen*, 865 P.2d 868, 870 (Colo. App. 1993).  Because this Court has diversity

jurisdiction over this case pursuant to 28 U.S.C. § 1332, *see* [Doc. 1 at ¶ 7], the Court

applies the substantive law of the forum state, including the forum's choice-of-law rules,

*Berry & Murphy, P.C. v. Carolina Cas. Ins. Co.*, 586 F.3d 803, 808 (10th Cir. 2009)

(applying Colorado law).   In Colorado, the interpretation of an insurance policy is

"governed by the law of the state with the most significant relationship to the insurance

contract."  *Id.*   Here, the Parties agree that the Umbrella Policy should be interpreted

pursuant to Colorado law.  *See* [Doc. 24 at 7–8; Doc. 27 at 6 n.2].

In insurance cases, the policyholder bears the burden of demonstrating coverage

under the insurance policy.  *Rocky Mountain Prestress, LLC v. Liberty Mut. Fire Ins. Co.*,

960 F.3d 1255, 1260 (10th Cir. 2020) (applying Colorado law).  If the insured satisfies this

burden, the burden shifts to the insurance company "to prove the applicability of an

exclusion from coverage."  *Id.*  If the insurer does so, the burden then shifts back to the

insured to show an exception to the coverage exclusion.  *Id.*

---

[4] In its Motion, Plaintiff also raises public-policy arguments as to why the physical contact exclusion is enforceable.  *See* [Doc. 24 at 10–16].  Defendants do not argue that the exclusion is unenforceable on public-policy grounds and focus only on what they believe is ambiguity in the Umbrella Policy.  *See* [Doc. 27 at 9 (Defendants arguing that RLI "misses the salient issue that the physical contact requirement can only be enforced as written if it is unambiguous")].  Accordingly, the Court does not address the public-policy arguments and focuses solely on whether the physical contact exclusion is ambiguous.

"An insurance policy's terms are construed according to principles of contract interpretation:  a court seeks to give effect to the intent and reasonable expectations of the parties."  *Auto-Owners Ins. Co. v. High Country Coatings, Inc.*, 388 F. Supp. 3d 1328, 1333 (D. Colo. 2019).   Under this approach, "words should be given their plain and ordinary meaning unless the intent of the parties, as expressed in the contract, indicates that an alternative interpretation is intended."  *Chacon v. Am. Fam. Mut. Ins. Co.*, 788 P.2d 748, 750 (Colo. 1990).  "In determining the plain and ordinary meaning of a term in an insurance policy, the Colorado Supreme Court has eschewed the use of 'technical readings' and instead looks to 'what meaning a person of ordinary intelligence would attach to' a policy term."  *Sullivan v. Nationwide Affinity Ins. Co. of Am.*, 842 F. App'x 251, 254 (10th Cir. 2021) (quoting *Bailey v. Lincoln Gen. Ins. Co.*, 255 P.3d 1039, 1051 (Colo. 2011)); *see also Bush v. State Farm Mut. Auto. Ins. Co.*, 101 P.3d 1145, 1146 (Colo. App. 2004) (explaining that courts interpreting insurance policies "give the words their plain meaning, avoid strained and technical interpretations, and construe the contract as would a reasonable person of ordinary intelligence").

If the terms of an insurance policy are ambiguous, i.e., they are "susceptible to more than one reasonable interpretation," *Cary v. United of Omaha Life Ins. Co.*, 108 P.3d 288, 288 (Colo. 2005), then the policy is construed against the drafter and in favor of coverage, *Cotter Corp. v. Am. Empire Surplus Lines Ins. Co.*, 90 P.3d 814, 820 (Colo. 2004).   Furthermore, "such exclusions are to be strictly construed against the insurer." *J & S Enters., Inc. v. Cont'l Cas. Co.*, 825 P.2d 1020, 1023 (Colo. App. 1991).  "Only if exclusions, when viewed as a whole, unambiguously and unequivocally negate coverage are they interpreted in the insurer's favor."  *Id.*

Disagreement between the Parties as to the meaning of insurance policy terms does not render the policy ambiguous. *Ad Two, Inc. v. City & Cnty. of Denver ex rel. Manager of Aviation*, 9 P.3d 373, 377 (Colo. 2000). Similarly, a split in legal authority does not necessarily mean that ambiguity exists. *Hecla Mining Co. v. N.H. Ins. Co.*, 811 P.2d 1083, 1092 n.13 (Colo. 1991). However, a "comprehensive debate" among courts may demonstrate that policy language is unclear. *Id.* (quotation omitted); *see also Thompson v. Md. Cas. Co.*, 84 P.3d 496, 504 (Colo. 2004) ("If there is a split of authority interpreting an insurance policy provision, then the provision may be ambiguous.").

## II.     Whether the Umbrella Policy Language is Ambiguous

As mentioned above, the physical contact exclusion excludes coverage for damages because of bodily injury "if there was no *physical contact between* [the insured] and the Uninsured/Underinsured motor vehicle." [Doc. 24-2 at 11–12 (emphasis added)]. RLI argues that the exclusion "is an unambiguous bar to coverage" because, since Mr. Vineyard's vehicle struck a gate, and the gate struck Mr. Barnes, "[t]here was no physical contact between Mr. Vin[e]yard's vehicle and Mr. Barnes" and "there is no UIM coverage available under the RLI Umbrella Policy." [Doc. 24 at 10]. Defendants disagree. They argue that the Umbrella Policy's physical contact exclusion is ambiguous because it does not specify whether the contact must be direct—i.e., Mr. Vineyard's car itself physically striking Mr. Barnes—or whether it also encompasses *indirect* contact—i.e., contact transferred through an intermediary (like the gate). [Doc. 27 at 9–10]. To demonstrate ambiguity, Defendants direct the Court to several cases in which courts have decided that similar insurance policy language is ambiguous, or otherwise encompasses indirect physical contact in addition to direct physical contact. *See* [*id.* at 10–15].

In its Reply brief, Plaintiff further develops its argument that the exclusion is unambiguous.  There, Plaintiff asserts that Defendants "ignore the critical word" in the physical contact exclusion—"between."  [Doc. 30 at 3].  It argues that "[i]n the context here, the word 'between' refers to 'filling the space limited by **two** objects,'" [*id.* (quoting *Between*, Webster's Third New Int'l Dictionary 209 (1993))], and "imports that **not more than two** persons or groups are set against each other," [*id.* (quoting *McIntire v. McIntire*, 192 U.S. 116, 120–21 (1904))].  RLI insists that the physical contact exclusion "refers to situations where the insured is injured by contact with the underinsured vehicle, without some intervening person or object."  [*Id.*].  Plaintiff also contends that the cases Defendants rely on are all distinguishable because "[n]one of the[m] . . . address policy language even close to that contained in the RLI Umbrella Policy."  [*Id.* at 4–6].

As a preliminary matter, the Court agrees with Plaintiff that the physical contact exclusion can reasonably be interpreted to require that Mr. Vineyard's vehicle directly make contact with, or touch, Mr. Barnes, with no intervening events or contact.  But this agreement does not end the Court's inquiry; the Court still must decide whether the exclusion is "susceptible to more than one reasonable interpretation."  *Cary*, 108 P.3d at 288.  Specifically, the Court must decide whether this Umbrella Policy provision could reasonably be interpreted to mandate coverage where Mr. Vineyard's vehicle *indirectly* made contact with Mr. Barnes, as Defendants argue.

Neither Party has cited any caselaw interpreting the specific language at issue in this case, and this Court could not locate any such authority.  However, the Court nevertheless finds the cases cited by the Parties helpful to its interpretation of the Policy.

The Court begins by briefly discussing some of those cases before turning to the language at issue in this case.

In *Lord v. Auto-Owners Insurance Co.*, 177 N.W.2d 653 (Mich. Ct. App. 1970), an insurance policy provided coverage for damages caused by an "uninsured automobile," which was defined to include "an automobile which causes bodily injury to an [insured] arising out of physical contact of such automobile with the [insured] or with an automobile which the [insured] is in, upon, entering or alighting from at the time of the accident." *Id.* at 654.  The insured sought coverage under this provision after an unidentified, hit-and-run driver ran into another vehicle, and that vehicle in turn hit the insured's vehicle.  *Id.* The Michigan Court of Appeals agreed that there was "physical contact" and thus there was coverage, finding that "an insured party is covered where the impact of the hit-and-run car was transmitted to his car through an intermediate car."  *Id.* at 655.

In *Anderson v. State Farm Mutual Automobile Insurance Co.*, 652 P.2d 537 (Ariz. 1982), the Arizona Supreme Court considered a policy that provided coverage for bodily injuries "arising out of physical contact of [an uninsured] automobile with the insured or with an automobile which the insured is occupying at the time of the accident."  *Id.* at 538. The court reviewed a number of court decisions "interpret[ing] 'physical contact' in very different ways," *id.* at 539–40, and noted that courts have "construe[d] 'physical contact' broadly in order to effectuate the purposes of uninsured motorist protection," *id.* at 540. The court held:

> In the instant case, it is evident that there was a vehicular collision with the hit-and-run car, and that the force of the unidentified car hitting the [intermediate] van was the cause of the collision between the van and the plaintiff's car, from which the injuries resulted.  Under these circumstances, we have no difficulty concluding that the injuries were the result of physical (albeit indirect) contact with the hit-and-run vehicle.  Where force has been

exerted from an unidentified vehicle through an intermediate object and where this fact may be verified in such a way to provide safeguards against fraud, we find that the physical contact requirement of the policy has been satisfied.

*Id.*

Similarly, in *Southern Farm Bureau Casualty Insurance Co. v. Brewer*, 507 So. 2d 369 (Miss. 1987), an insurance policy provided coverage for damages caused by an uninsured motor vehicle, which was defined to include "an automobile which causes bodily injury and/or property damage to an insured arising out of physical contact of such automobile with the insured or with an automobile which the insured is occupying at the time of the accident." *Id.* at 370.  An insured sought coverage under the policy after an unidentified pickup driver struck a brake drum lying on the road and propelled it into the insured's car, causing damage and injuries.  *Id.*   The Mississippi Supreme Court concluded that the policy language "was capable of two meanings" and thus had to be construed against the insurance company.  *Id.* at 372.  Specifically, the court concluded that "physical contact" included "the physical contact of th[e] vehicle with an intermediate vehicle or other object which, in the same mechanism of the accident, strikes the insured's vehicle," so long as "the injury causing impact . . . ha[s] a complete, proximate, direct and timely relationship with the first impact between the [first] vehicle and the intermediate vehicle." *Id.* (quotation omitted).

In *Hill v. Citizens Insurance Co. of America*, 403 N.W.2d 147 (Mich. Ct. App. 1987), a camper truck allegedly propelled a rock through the windshield of the insured's vehicle, killing the insured's husband.  *Id.* at 147.  The insured sought UIM coverage pursuant to a policy that provided coverage for "bodily injury to an [insured] arising out of physical contact of such automobile with the [insured] or with an automobile which the [insured] is

occupying at the time of the accident."  *Id.* at 148.  After surveying applicable case law, the Michigan Court of Appeals summarized that "the overwhelming majority of jurisdictions hold that the 'physical contact' provision in uninsured motor vehicle coverage may be satisfied even though there is no direct contact between the [uninsured] vehicle and claimant or claimant's vehicle."  *Id.* at 152.  And because there was a "substantial nexus" between the uninsured vehicle and the rock, the court reversed the grant of summary judgment in favor of the insurance company.  *Id.*

And finally, in *Miller v. United States Fidelity & Guaranty Insurance Co.*, 738 P.2d 425 (Idaho Ct. App. 1987), while the Idaho Court of Appeals did not directly interpret the contract phrase "physical contact"—it instead ascertained the meaning of a policy providing UM coverage in the event the insured was "hit" or "struck" by an uninsured motorist, *see id.* at 426—it stated:

> A physical contact requirement may be inserted into a UM endorsement issued in Idaho.  We deem it clear that the "hit" language in the instant policy represents just such a physical contact requirement.  Moreover, the term "struck" in the PIP endorsement imposes a similar requirement of physical contact.  Consequently, [the insured] may not recover under either type of first-party coverage unless there was physical contact with the injury-causing vehicle.
>
> What, then, is physical contact?  It obviously includes a direct touching by a motor vehicle of the insured's body.  However, it is not entirely confined to such situations.  If it were, it hardly would comport with an insured's reasonable expectation of coverage.  Rather, physical contact also includes indirect contact which occurs when a vehicle knocks an intermediate object into the insured.

*Id.* at 427 (citations omitted).  Though the *Miller* court was not called to directly interpret "physical contact" in the context of an insurance policy, its discussion is nevertheless useful to ascertain the plain and ordinary meaning of "physical contact."

11

In some policies, however, the phrase "physical contact" is modified by an adjective, which may or may not impact its meaning.  For example, in *McJimpson v. Auto Club Group Insurance Co.*, 889 N.W.2d 724 (Mich. Ct. App. 2016), the Michigan Court of Appeals held that an insurance policy requiring that the uninsured vehicle have "direct physical contact" with the insured or the insured's vehicle was not ambiguous and that "[b]y . . . requiring '*direct* physical contact' with the unidentified vehicle, the policy limits uninsured-motorist coverage to cases in which the unidentified vehicle itself strikes an insured person or vehicle."  *Id.* at 725–26, 728.  And in *Nationwide Insurance Co. v. Elchehimi*, 249 S.W.3d 430 (Tex. 2008), the Texas Supreme Court held that indirect contact did not satisfy a Texas statute's requirement of "*actual* physical contact."  *Id.* at 432–33 (emphasis added); *but see Paul v. Farm Bureau Ins. Co. of Mich.*, No. 339075, 2018 WL 3039742, at *2, *5 (Mich. Ct. App. June 19, 2018) (holding that a policy covering injuries sustained by a vehicle that "causes bodily injury by *actual* physical contact with the injured person or the auto the injured person is occupying" was not synonymous with *McJimpson*'s "direct physical contact" requirement and was ambiguous, such that it was to be construed in favor of the insured).

Based on these cases, the Court finds that "physical contact" can reasonably be interpreted to encompass both direct *and* indirect contact and is not limited to direct contact alone.  *See Hecla Mining Co.*, 811 P.2d at 1092 n.13; *Thompson*, 84 P.3d at 504; *see also Contact*, Webster's Third New Int'l Dictionary 490 (1993) (defining "contact" as "a touching or meeting" *and* "association or relationship"); *Compass Ins. Co. v. City of Littleton*, 984 P.2d 606, 619 (Colo. 1999) (courts may rely on dictionary definitions to ascertain the meaning of words used in an insurance policy).  Although Plaintiff asserts

12

that these cases are distinguishable because the policies discussed therein did not contain "the operative phrase 'physical contact between,'" [Doc. 30 at 4], this does not negate their utility in the Court's analysis.  The policies in many of the above cases require "physical contact of" the uninsured vehicle "*with*" the insured,[5] and the Court does not see a meaningful difference between "physical contact between [two things]" and "physical contact of [one thing] with [another thing]," or find the first phrase any clearer than the second.

In any event, Plaintiff does not appear to dispute that "physical contact" can include indirect physical contact; rather, Plaintiff focuses on the word "between," arguing that the "use of the words 'physical contact between' refers to situations where the insured is injured by contact with the underinsured vehicle, without some intervening person or object," and that "physical contact between" means that "the gap separating [the insured and the uninsured vehicle] has closed such that they are in contact."  [*Id.* at 3].  Plaintiff posits that the exclusion's use of the word "between" is akin to the policy language in *McJimpson* requiring *direct* physical contact between the insured (or her vehicle) and the uninsured vehicle.  [*Id.* at 6 ("The use of the word 'between' accomplishes the same purpose of confining coverage to situations where the underinsured vehicle, itself, makes physical contact with the insured or his vehicle.")].

---

[5] *See, e.g.*, *Lord*, 177 N.W.2d at 654 ("physical contact of such automobile with the [insured] or with an automobile which the [insured] is in"); *Anderson*, 652 P.2d at 538 ("physical contact of such automobile with the insured or with an automobile which the insured is occupying at the time of the accident"); *Hill*, 403 N.W.2d at 148 ("physical contact of such automobile with the [insured] or with an automobile which the [insured] is occupying at the time of the accident"); *Brewer*, 507 So. 2d at 370 ("physical contact of such automobile with the insured or with an automobile which the insured is occupying at the time of the accident"); *Paul*, 2018 WL 3039742, at *2 ("actual physical contact with the injured person or the auto the injured person is occupying").

While Plaintiff's argument has some appeal, the Court cannot conclude that the use of the word "between" has such force as to eliminate all ambiguity in the phrase "physical contact," to make clear that "physical contact" is limited to *direct* physical contact, or to otherwise clearly and unambiguously render the exclusion applicable to the facts of this case.   Just as there can be direct contact *between* two things, there can be indirect contact *between* two things.  *See, e.g.*, *Smith v. Nationwide Mut. Ins. Co.*, No. 04-02-00646-CV, 2003 WL 21391534, at *2 (Tex. App. June 18, 2003) ("Indirect contact occurs *between* car A and car C when car A strikes car B and propels it into car C." (emphasis added)); *Paul*, 2018 WL 3039742, at *3 (explaining that "the physical contact requirement of an insurance policy may be met not only through 'direct' contact, but also through 'indirect' contact *between* the unidentified vehicle and the injured person or the vehicle the injured person was occupying" (emphasis added)); *Kersten v. Detroit Auto. Inter-Ins. Exch.*, 267 N.W.2d 425, 430 (Mich. Ct. App. 1978) ("Recently, physical contact has been stretched to include situations where no direct contact occurs.   The most common circumstance . . . is the intervening vehicle situation where the hit-and-run vehicle strikes a second or intervening vehicle which in turn is propelled into the insured vehicle.   Under these circumstances, *there is a physical contact, although indirect or transmitted, between* the insured vehicle and the hit-and-run vehicle." (emphasis added)). That these courts have so readily, and naturally, used the word "between" to explain indirect contact supports a conclusion that physical contact can be *between* two non-immediate things.

Plaintiff also relies on *Elchehimi*, a case from the Texas Supreme Court, in support of its argument that the physical contact exclusion unambiguously bars coverage.  [Doc.

14

30 at 6].  *Elchehimi* concerned the meaning of a Texas statute, which provided that if the tortfeasor is unknown, "*actual physical contact* must have occurred *between* the motor vehicle owned or operated by the unknown person and the person or property of the insured," *Elchehimi*, 249 S.W.3d at 432–33 (quotation omitted and second emphasis added), and whether an insured could recover UIM benefits after an axle-wheel assembly separated from a truck and hit and damaged his vehicle, *id.* at 432.  RLI argues that this statutory language "closely tracks the language in the RLI Umbrella Policy" and suggests that this Court should rely on *Elchehimi*'s holding that "[n]o . . . substitute exists for the requirement of actual physical contact with the motor vehicle itself."  [Doc. 30 at 6 (quoting *Elchehimi*, 249 S.W.3d at 434)].  But *Elchehimi* was based on the statute's requirement of "*actual* physical contact," not the statute's use of the word "between."  *See Elchehimi*, 249 S.W.3d at 434 ("We agree that a collision with a separated piece of a motor vehicle, such as an axle-wheel assembly, is not actual physical contact with the motor vehicle as specifically required by the statute.").  The Court thus finds *Elchehimi* distinguishable from this case, where the Umbrella Policy does not modify "physical contact" with any limiting words.

Finally, Plaintiff's selected dictionary definition does not change the Court's analysis or clear up any ambiguity.  Plaintiff insists that "between" means "filling the space limited by two objects," [Doc. 30 at 3 (quotation and emphasis omitted)], but that definition simply does not make sense when used in the context of the Policy language here— "physical contact" is not a tangible object and cannot readily be understood to "fill the space" between an insured person and an uninsured vehicle.  *Cf. Between*, Webster's Third New Int'l Dictionary 209 (1993) (after defining "between" as "filling the space limited

by two objects," providing the following example:  "two buildings with a parking area [between]").[6]

Webster's Dictionary contains a number of definitions for "between," including "joining, connecting."  *Id.*  And a person and a car can be joined or connected through indirect physical contact even if the person does not directly touch the car.  The Court is therefore not convinced that the use of the word "between" means that the physical contact exclusion unambiguously requires direct physical contact of the underinsured vehicle with the insured or the insured's vehicle.  Mr. Vineyard's car made physical contact with the gate, and the gate made physical contact with Mr. Barnes; there was indirect physical contact between—i.e., connecting—Mr. Vineyard's car and Mr. Barnes.  *Cf. Allied Fid. Ins. Co. v. Lamb*, 361 N.E.2d 174, 179 (Ind. Ct. App. 1977) ("We hold that 'physical contact' . . . occurs when an unidentified vehicle strikes an object impelling it to strike the insured automobile and a substantial physical nexus between the unidentified vehicle and the intermediate object is established.  Hypothetical situations in which indirect physical contact could possibly satisfy the condition are when:  the unidentified automobile strikes another automobile propelling it into the insured's automobile; [or] the unidentified automobile strikes a telephone pole causing it to strike the insured's automobile.").

"To obtain the benefit of an exclusion, an insurer must establish that the exclusion applies and is not subject to any other reasonable interpretation."  *Leprino Foods Co. v.*

---

[6] This lack of fit may be because the Webster's Dictionary definition pressed by Plaintiff applies when the word is used as an adverb, *see Between*, Webster's Third New Int'l Dictionary 209 (1993), while "between" is used in the physical contact exclusion as a preposition.

*Factory Mut. Ins. Co.*, 453 F.3d 1281, 1287 (10th Cir. 2006) (citing *Am. Fam. Mut. Ins. Co. v. Johnson*, 816 P.2d 952, 953 (Colo. 1991)).   Here, where there is no limiting or modifying language on the phrase "physical contact," the Court finds that the physical contact exclusion could reasonably be interpreted to provide coverage for indirect physical contact like the contact that occurred in this case; the exclusion is thus ambiguous and must be construed in the insured's favor.  *Cotter Corp.*, 90 P.3d at 820. "Had the insurance company intended that the provision apply only where there is direct, as opposed to indirect physical contact, . . . it should have so provided in unmistakably clear language."  *Brewer*, 507 So. 2d at 372.

In sum, summary judgment is not warranted on Plaintiff's declaratory judgment claim.  And because Plaintiff's arguments related to Defendants' counterclaims are based solely on a purported lack of coverage under the physical contact exclusion, *see* [Doc. 24 at 16–18], Plaintiff is similarly not entitled to summary judgment on Defendants' counterclaims.  The Motion for Summary Judgment is respectfully **DENIED**.[7]

---

[7] On July 23, 2024, Defendants filed an opposed Motion to Add Exhibit in Support of Response to Motion for Summary Judgment. [Doc. 38].  Because the exhibit relates to the Parties' substantive arguments about bad faith, which this Court does not address after finding the Umbrella Policy ambiguous, the Court will **DENY** the Motion to Add Exhibit as moot.

## CONCLUSION

For the reasons set forth herein, **IT IS ORDERED** that:

(1)   Plaintiff's Motion for Summary Judgment [Doc. 24] is **DENIED**; and

(2)   The Motion to Add Exhibit in Support of Response to Motion for Summary Judgment [Doc. 38] is **DENIED as moot**.


DATED:  September 23, 2024                    BY THE COURT:

_____
Nina Y. Wang
United States District Judge